Josh D. Gruenberg, Esq. SB #163281
Colette N. Mahon, Esq. SB #304745
GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

Attorneys for Plaintiff,
**MARGARITA SMITH**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MARGARITA SMITH, an individual,

    Plaintiff,

    v.

CORECIVIC OF TENNESSEE LLC;
and DOES 1 through 25, Inclusive,

    Defendants.

Case No.  **'20 CV0808 L    WVG**

**PLAINTIFF'S COMPLAINT FOR:**

1. WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY [Cal. Labor Code §§ 6400 *et seq.*, 6401 *et seq.*]];
2. WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY [Cal. Code Regs. Tit. 8, §§ 5141, 3380];
3. WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY [29 USC 654(a)(1)];
4. WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY [29 C.F.R. §§ 1910.132];
5. NEGLIGENT SUPERVISION;
6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

**[JURY TRIAL DEMANDED]**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1.  Plaintiff, MARGARITA SMITH, (hereinafter "Plaintiff" or "SMITH"), is a natural person who is, and at all relevant times was, a resident of the United States and a domiciliary of the State of California, County of San Diego.

2.  Plaintiff is informed and believes and thereon alleges that Defendant, CORECIVIC OF TENNESSEE LLC (hereinafter "CORECIVIC") is an unknown business entity doing business in the State of California, County of San Diego with its headquarters and principal place of business in Tennessee.

3.  Pursuant to 28 U.S.C. Section 1391(b)(2), the proper venue for this action is in the Southern District of California, as a substantial part of the events or omissions giving rise to the claims against each defendant occurred in San Diego, California.

4.  The matter in controversy exceeds the sum of $75,000.00.

5.  As a matter in controversy exceeds the sum of $75,000, and the Plaintiff and the Defendants are diverse as set forth in 28 U.S.C. Section 1332(a)(1), this Honorable Court has diversity jurisdiction with respect to this action.

6.  Plaintiff is ignorant to the true names and capacities of the Defendants sued herein as DOES 1 through 25 and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

7.  Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries and damages as herein alleged are directly, proximately and/or legally caused by Defendant.

8.  Plaintiff is informed and believes and thereon alleges that the

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    aforementioned DOES are somehow responsible for the acts alleged herein

2    as the agents, employers, representatives or employees of other named

3    Defendant, and in doing the acts herein alleged were acting within the scope

4    of their agency, employment or representative capacity of said named

5    Defendant.

6    9.    As a further proximate result of Defendants' unlawful and intentional

7          actions, and each of their agents, against Plaintiff as alleged herein, Plaintiff

8          has been harmed in that she suffered emotional pain, mental anguish, loss of

9          enjoyment of life, and emotional distress.

10   10.   Defendants committed these acts alleged herein maliciously, fraudulently,

11         and oppressively, and with the wrongful intention of injuring Plaintiff, and

12         acted with an improper and evil motive amount to malice or despicable

13         conduct.  Alternatively, Defendants' wrongful conduct was carried out with

14         a conscious disregard for Plaintiff's rights.

15   11.   Defendants' conduct warrants the assessment of punitive damages in an

16         amount sufficient to punish Defendants and deter others from engaging in

17         similar conduct.

18   12.   Plaintiff seeks compensatory damages, punitive damages, costs of suit

19         herein, and attorney's fees.

20   13.   Furthermore, Plaintiff alleges that the acts complained of herein took place

21         within the above captioned judicial district.

22                        **SPECIFIC FACTUAL ALLEGATIONS**

23   14.   Plaintiff re-alleges and incorporates by reference each and every allegation

24         contained in the preceding paragraphs as though fully set forth herein.

25   **I.    The Parties**

26   15.   Defendant, CORECIVIC, formerly known as Corrections Corporation of

27         America, hired Plaintiff in or around April 2009, in the capacity of

28         Detention Officer at Otay Mesa Detention Center.

---

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

16.   Defendant is a private operator of correctional facilities with contracts for services with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Marshals Service ("USMS").

17.   Otay Mesa Detention Center is a contract detention facility (CDF). It is a privately owned immigration detention center, owned and operated by Defendant and located in San Diego, California.

18.   Otay Mesa Detention Center houses approximately between 1200 to 1300 detainees and inmates.

**II.    Plaintiff's Career with Defendant**

19.   Throughout her employment with Defendant, Plaintiff had a successful and accomplished career.

20.   Throughout Plaintiff's career, she had a variety of roles and responsibilities. Her duties included but were not limited to: working in various housing units, conducting safety and security checks, feeding inmates/detainees, working in the control room, conducting investigations and serving disciplinary reports to detainees/inmates, which required Plaintiff to enter inmates' units, working as a kitchen officer, and intake processing of new detainees/inmates. Plaintiff's main objective was the safety and welfare of the detainees/inmates being detained at the facility.

21.   In or around 2013, she became a Transportation Detention Officer in Defendant's Transportation Department. Her duties included, but were not limited to: transporting inmates or detainees to off site medical appointments, off site courts, airlift operations, and special off site appointments.

22.   In or around April 2016, Defendant promoted Plaintiff to Senior Detention Officer (Sargent/Transportation Supervisor) in the Transportation Department. As Senior Detention Officer, Plaintiff's duties and responsibilities included, but were not limited to: supervising all staff in the

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

Transportation Department, which included responsibility for their sick time, personal time off, scheduling and assigning transportation officers for inmates/detainees off site appointments, which included, medical appointments, morning off site court visits, and all other off site assignments. Plaintiff was also responsible for responding to Defendant's customers' (ICE and USMS) requests. Plaintiff's responsibilities also included keeping Defendant's Transportation Department in compliance by consistently being ready for audits related to licensing and record keeping of all business pertaining to the Transportation Department.

23. In or around August 2018, Plaintiff also began managing Defendant's contract with ICE for security for inmates/detainees who required hospitalization. Her duties consisted of scheduling Detention Officers assigned to the hospitals and, conducting compliance rounds at the various hospitals.

24. In or around October 2019, Defendant secured a contract with USMS to provide security for inmates who required hospitalization, which Plaintiff also began managing.

25. Plaintiff built rapport with staff, hospital providers, detainees, inmates, ICE and USMS.

26. On or about July 31, 2019, Defendant recognized Plaintiff as the "Supervisor of the 3rd Quarter."

27. Defendant also awarded Plaintiff the "Employee of the Year" for 2019.

28. In or around January 2020, Defendant nominated Plaintiff as President of Defendant's Morale Committee.

**III.  COVID-19 Is A Communicable Disease That Can Cause Serious Illness or Death**

29. On March 11, 2020, the World Health Organization declared the global outbreak of COVID-19, the disease caused by the novel coronavirus, a

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    pandemic.

2   30.   It is well established that COVID-19 is easily transmitted, especially in group settings, and that the disease can be extremely serious, causing serious illness and death.

5   31.   There is no effective treatment or cure yet for the disease and everyone is at risk of infection.

7   32.   The CDD explained that COVID-19 appears to spread easily and sustainably within communities and is thought to transfer primarily by person-to-person contact through respiratory droplets produced when an infected person coughs or sneezes and may transfer through contact with surfaces or objects contaminated with these droplets. There is also evidence of asymptomatic transmission, in which an individual infected with COVID-19 is capable of spreading the virus to others before exhibiting symptoms.

14   33.   According to the CDC, older adults and people who are immunocompromised, have severe chronic medical conditions like heart, lung or kidney disease, moderate to severe asthma, severe obesity, diabetes, or other serious underlying medical conditions are also at higher risk for more serious COVID-19 illness. Early data suggested older people are twice as likely to have serious COVID-19 illness.

20   34.   The CDC has also identified people with moderate to severe asthma may be at a higher risk for severe illness from COVID-19, including pneumonia and acute respiratory disease.

23   35.   Individuals who survive may experience permanent loss of respiratory capacity, heart conditions, kidney damage, and other complications.

**III.   Defendant Is At Higher Risk For Transmission Of COVID-19**

26   36.   California/OSHA identified facilities that house inmates or detainees as being at increased risk for transmission of aerosol transmissible diseases. (CCR, title 8, section 5199). COVID-19, a novel pathogen, is such a disease.

37.  At Otay Detention Center, the risk of spread was apparent and has already occurred.

38.  Employees of Otay Detention Center worked in close proximity to one another and inmates and detainees who were maintained in very close quarters.

39.  Taking steps to prevent the COVID-19 from entering and spreading throughout the facility was of the utmost importance in this type of working environment.

40.  As of April 27, 2020, approximately 142 inmates/detainees and numerous employees and their families have contracted COVID-19.

**III.  Plaintiff Is At Higher Risk For More Serious Illness From COVID-19**

41.  Plaintiff suffers from an underlying medical condition, asthma, for which she takes daily medication, and for which she is at a higher risk of illness from COVID-19.

42.  Throughout 2019, Plaintiff was in and out the hospital suffering from pneumonia, respiratory issues, and related medical illnesses, which also placed her at higher risk of illness from COVID-19.

43.  During the first week of March 2020, Plaintiff was out of work due to pneumonia.

**IIII.  Defendant Failed To Take Proper Precautions To Prevent The Spread of COVID-19**

44.  On or about Monday, March 9, 2020, Plaintiff returned to work.

45.  Upon Plaintiff's return to work and through the remainder of her employment with Defendant, COVID-19 cases across the United States and in San Diego County rapidly increased. On March 12, 2020, the CDC reported 1,215 cases with 36 deaths. By March 17, 2020, the CDC reported 1,626 cases with 75 deaths. By March 30, the CDC reported 140,940 cases with 2,405 deaths. Approximately one month later, on April 28, 2020, the

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

CDC reported 981,246 cases with 55,258 deaths. On March 13, 2020, San Diego County reported 5 cases, and by March 23, there were 213 cases and no reported deaths. Approximately one month later, on April 27, 2020, San Diego reported 3,141 cases and 113 deaths.

46. Even the threat of spread of COVID-19 outside of the detention center was so apparent that many government officials issued "shelter in place" orders and social distancing mandates, which requires persons to stay at least six feet distance apart from each other.

47. By March 17, 2020, the City and County of San Francisco, along with a group of five other Bay Area counties and the City of Berkeley, issued shelter in place limitations across the Bay Area, requiring everyone to stay safe at home except for certain essential needs.

48. Two days later, on March 19, 2020, the State of California issued a state-wide "shelter in place" order requiring people to stay at home except for essential activities and to maintain social distancing to the maximum extent possible.

49. During the weeks leading up to Plaintiff's constructive termination, Defendant was aware of the grave nature of COVID-19 and its rapid transmission.

50. During the weeks leading up to Plaintiff's constructive termination, Defendant was repeatedly advised by numerous sources to take measures to prevent the spread of COVID-19 in its facility.

51. During the weeks leading up to Plaintiff's constructive termination, Defendant failed to adequately respond to the COVID-19 pandemic.

52. On March 12, 2020, Defendant posted on its website, "Consistent with CDC recommendations, personal protective equipment (PPE) such as face masks are allowed to be worn by staff and those in our care within the facility. Disposable gloves are readily available for staff conducting searches and

1   handling property. Staff working at the front lobby screening site wear

2   PPE." This was false.

3   53.   Not only did Defendant not provide gloves or masks to its entire staff,

4   Defendant expressly prohibited Plaintiff and its other employees of

5   Defendant from wearing masks in the housing units and other areas of the

6   facility. Defendant informed its staff of this prohibition in multiple morning

7   briefings sessions.

8   54.   On information and belief, Defendant informed its staff that if they provided

9   masks to the Detention Officers, then it would scare the inmates/detainees

10   and they would have to provide them to them as well, which would cause

11   them to go over budget. Defendant repeatedly put profits over people.

12   55.   Even Detention Officers who were responsible for patting down detainees

13   when necessary were also not provided with gloves or masks.

14   56.   Defendant did not provide sanitizer to staff. There were sanitizer dispensers

15   in only certain areas of the facility, but throughout Plaintiff's career with

16   Defendant, every time she attempted to use a sanitizer dispenser, it was

17   empty.

18   57.   The restrooms used by detainees/inmates and staff, were periodically

19   cleaned by detainees/inmates, as well as the dining hall tables and kitchen.

20   On information and belief, the detainees/inmates did not have proper

21   instruction how to use the cleaner so that it was effective. On information

22   and belief, the efficacy of the cleaner is dependent on leaving the cleaner on

23   a surface for ten minutes.

24   58.   Additionally, the inmates/detainees used the same rags to clean throughout

25   the day, including in the medical unit. Even in the midst of the COVID-19

26   pandemic, Defendant did not provide paper towels instead of dirty rags.

27   59.   Defendant also did not provide any cleaning sanitizer or disinfectant wipes

28   to staff, so staff could keep their things and work areas clean.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

60. Each morning, Plaintiff, along with her coworkers, was required to clock in and out through the same device, by placing a finger on the device or punching in times multiple times throughout the day. At the end of the day, Plaintiff and her coworkers were required to answer a series of questions on the device by punching the buttons. The device was never regularly cleaned. Even in the midst of the COVID-19 pandemic, Plaintiff did not observe the device ever being cleaned.

61. On information and belief, the kiosk machine that Plaintiff and her coworkers were also required to touch in order to obtain and return keys for the different departments they were working in at the start and end of their shifts was also never regularly cleaned. Neither were the keys that were used by different Detention Officers each day.

62. Additionally, upon their arrival to work, Plaintiff, along with many of her coworkers, were required to obtain their equipment, such as a handheld radio and handcuffs, from Central Control. Prior to and during the weeks leading up to Plaintiff's constructive termination, these items were not regularly cleaned. During Plaintiff's employment, she never observed the employee(s) in charge of handing out equipment to other officers wear a glove or mask while carrying out these duties, even in the midst of the COVID-19 pandemic.

63. In addition, on information and belief, the grey bins that staff and visitors place items in, such as shoes, lunch, jackets, purses, and backpacks, and which are placed through a metal detector by either staff or visitors in the main lobby entrance, were not disinfected.

64. On Plaintiff's information and belief, there were never any deep cleanses of the facility, even in the midst of the COVID-19 pandemic.

65. Prior to and during the weeks leading up to Plaintiff's constructive termination, Defendant continued to feed inmates/detainees in the dining

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1   hall, which contained approximately two housing units at once, typically

2   approximately 240 persons at once.

3   66.   Prior to and during the weeks leading up to Plaintiff's constructive

4   termination, Defendant also continued to hold and require employees to

5   attend morning briefing sessions. These briefing session were held in a break

6   room with approximately thirty to forty people at once.

7   67.   When Defendant did begin to take steps to prevent transmission, it was not

8   adequate.

9   68.   When Plaintiff logged into her computer, she was presented with basic

10   information, such as washing her hands for twenty seconds, covering her

11   mouth if she coughed, practicing social distancing and staying home if she

12   was sick. Defendant did not provide any protocols or directions related to

13   decreasing the risk of transmission in its facility, directions on how to

14   practice social distancing in the facility, or implement any steps to properly

15   disinfect and clean or provide protective gear in response to the COVID-19

16   pandemic.

17   69.   In or around March 2020, Defendant, through Assistant Warden ("AW"),

18   Joe Roemmich ("Roemmich"), directed all detention officers that were

19   assigned to the Transport Department and Intake/Discharge Officers, to take

20   temperatures of inmates/detainees leaving the facility. Defendant directed

21   that any inmate/detainee with a temperature over 100.4 was required to

22   return to their unit. The Medical Unit was between the inmates/detainees

23   housing units and the Intake/Discharge unit, so any potential case of

24   COVID-19 was required to pass the Medical Unit, exposing the entire area

25   between their housing unit and the Intake/Discharge Unit. Defendant did not

26   take reasonable steps to prevent the spread of COVID-19 by reducing

27   potentially exposed areas within the facility. Furthermore, returning an

28   inmate/detainee with a temperature over 100.4 would potentially expose

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    their housing unit to an increased risk of contracting COVID-19. In addition,

2    Defendant required its non-medical personnel employees to obtain

3    inmate/detainee temperatures while medical personnel with proper training

4    and equipment were readily available.

5    70.    On the morning of March 17, 2020, Plaintiff arrived to work and attended

6    the morning briefing session with her coworkers. Warden Christopher

7    LaRose and Assistant Warden ("AW") Robert Garcia ("Garcia") were

8    present. Detention Officer Trick asked the wardens if they were going to

9    provide them with sanitizer or disinfectant wipes to keep their things and

10    working areas clean. Warden LaRose replied they had a budget for that and

11    would be getting it soon. On information and belief, these were not provided

12    as promised.

13    71.    In the briefing meeting, Detention Officer Castrejom asked the wardens if

14    they were going to get clean rags for her "porters" (cleaning crew) because

15    they were having a hard time getting clean rags and were re-using the same

16    rags throughout the day. Warden LaRose replied, "that chemical [in the

17    cleaner] will kill anything, any virus," or words to that effect. Officer

18    Castrejom tried to push back and replied, "Fine, but we are using dirty rags,"

19    or words to that effect. Warden LaRose replied they would get them clean

20    rags. Clean rags were never supplied and the porters continued to use dirty

21    rags to clean the facility.

22    72.    Before Plaintiff left the briefing meeting, Warden LaRose's parting words

23    were, "look guys, when or if we get it, we're all going to eventually get it,"

24    or words to that effect.

25    73.    On or about March 17, 2020, Plaintiff went out on medical leave.

26    74.    Defendant did not take temperatures of persons before they entered the

27    facility or otherwise triage them to determine if they were experiencing any

28    COVID-19 related symptoms until approximately on or about the last week

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1   of March 2020.

75.   When Defendant did begin taking temperatures, it did so in the enclosed small lobby of the facility. Defendant was readily able to take temperatures outside of the facility to ensure persons with a temperature did not actually enter into the building, increasing the risk of transmission.

76.   It was all too little too late.

77.   Since Plaintiff's departure, numerous coworkers and their family members have contracted COVID-19. Some have passed away and others became and continue to become seriously ill.

78.   On March 30, 2020, ICE Health Service Corps (IHSC) sent a letter to Defendant's staff, including Plaintiff, and ICE leadership. It notified them that on March 29, 2020, three detainees presented to medical with complaints of unspecified lower respiratory illness symptoms. It notified them that IHSC leadership and Core Civic staff made the following recommendations: To implement cohorting (housing together as a group) the unit that housed the three symptomatic detainees and restrict movement for 14 days. There was no way to ensure social distancing. There was only one door in and out of the unit and each room within the units had the capacity to hold eight detainees with bunk beds. The recommendations also permitted exposed detainees to participate in recreational activities and did not require detainees to wear a surgical mask while doing so.

79.   The letter provided few additional recommendations. Each falls short of providing Plaintiff, her coworkers with a safe working environment.

80.   By creating an unsafe work environment, Defendant essentially terminated Plaintiff's employment.

81.   On or about March 31, 2020, Plaintiff notified Defendant in writing that she was resigning. Later that day, AW Roemmich called Plaintiff and told her, "why don't you give it a month? This thing will blow over," or words to that

1   effect.

2   82.   Defendant intentionally created or knowingly permitted working conditions

3   that were so intolerable or aggravated at the time of the Plaintiff's

4   resignation that a reasonable employer would realize that a reasonable

5   person in the employee's position would be compelled to resign.

6   83.   As of April 23, 2020, there were approximately 142 inmates/detainees and

7   numerous of Defendant's staff who tested positive for COVID-19. This is

8   not to account for the number of family members of Defendant's employees

9   who have also tested positive.

10  84.   Because of the uncontrolled outbreak and transmission of COVID-19 at

11  Defendant's facility, a County of San Diego COVID-19 task force is

12  investigating and trying to help address the situation.

13  **FIRST CAUSE OF ACTION**

14  **WRONGFUL CONSTRUCTIVE TERMINATION**

15  **IN VIOLATION OF PUBLIC POLICY**

16  **[Cal. Labor Code §§ 6400 *et seq.*, 6401 *et seq.*]**

17  85.   Plaintiff re-alleges and incorporates by reference each and every allegation

18  contained in the preceding paragraphs as though fully set forth herein.

19  86.   At all times relevant, Plaintiff was Defendant's employee.

20  87.   California Labor Code §§ 6400 *et seq.* and 6401 *et seq.* were in full force

21  and effect and were binding on Defendant.

22  88.   California Labor Code § 6407 requires that "[e]very employer and every

23  employee shall comply with occupational safety and health standards, with

24  Section 25910 of the Health and Safety Code, and with all rules, regulations,

25  and orders pursuant to this division which are applicable to his own actions

26  and conduct."

27  89.   California Labor Code § 6400(a) requires an employer to provide a safe

28  work environment for their employees.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

90.  California Labor Code § 6401 requires employers to "furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of the employees."

91.  California Labor Code § 6306 provides that "safety device" and "safeguard" "shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger."

92.  California Labor Code § 6403 provides that "[n]o employer shall fail or neglect to do any of the following: (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."

93.  California Labor Code § 6404 provides that "[n]o employer shall occupy or maintain any place of employment that is not safe and healthful."

94.  California Labor Code § 6406 provides that "[n]o person shall"

   a) Remove, displace, damage, destroy or carry off any safety device, safeguard, notice, or warning, furnished for use in any employment or place of employment.

   b) Interfere in any way with the use thereof by any other person.

   c) Interfere with the use of any method or process adopted for the protection of any employee, including himself, in such employment, or place of employment.

   d) Fail or neglect to do every other thing reasonably necessary to protect the life, safety, and health of employees.

95.  Defendant's conduct, as alleged herein, created an unsafe work environment.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

96.   Plaintiff complained about her safety concerns to Defendant.

97.   Defendant intentionally created or knowingly permitted these working conditions.

98.   Plaintiff feared for her health and safety.

99.   Defendant constructively terminated Plaintiff's employment.

100.  Such actions are unlawful, in violation of public policy of the State of California, and have resulted in damage and injury to Plaintiff, as alleged herein.

101.  Plaintiff believes and thereon alleges that Defendant's failure to provide a safe work environment was a substantial motivating reason for Defendant's constructive termination of her employment with Defendant.

102.  Defendants' constructive termination of Plaintiff's employment on the basis of its failure to provide a safe work environment violated the public policy of the State of California embodied in California Labor Code §§ 6400 *et seq.* and 6401 *et seq.*, in violation of California law pursuant to City of Moorpark v. Sup. Ct. (1998) 18 Cal.4th 1143.

103.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

104.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

105.  As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1   deter future similar reprehensible conduct.

2   **SECOND CAUSE OF ACTION**

3   **WRONGFUL CONSTRUCTIVE TERMINATION**

4   **IN VIOLATION OF PUBLIC POLICY**

5   **[Cal. Code Regs. Tit. 8, §§ 5141, 3380]**

6   106.   Plaintiff re-alleges and incorporates by reference each and every allegation

7   contained in the preceding paragraphs as though fully set forth herein.

8   107.   At all times relevant, Plaintiff was Defendant's employee.

9   108.   The California Code of Regulations Title 8 of the California Occupational

10   Safety and Health Regulations (Cal/OSHA) was in full force and effect and

11   was binding on Defendant.

12   109.   Title 8 section 3380 requires employers to conduct a hazard assessment to

13   determine if hazards are present or are likely to be present in the workplace

14   that necessitate the use of Personal Protective Equipment (PPE). If such

15   hazards are present, or likely to be present, the employer is required to select

16   and provide affected employees with properly fitting PPE that would

17   effectively protect employees.

18   110.   COVID-19 was a hazard that was present, or likely to be present, in

19   Defendant's workplace that necessitated the use of PPE.

20   111.   Title 8 section 5141 requires employers to protect employees from harmful

21   exposures (as defined by section 5140, which includes an exposure to fumes,

22   mists, vapors or gases by inhalation that results in or has the probability to

23   result in injury, illness, disease, impairment or loss of function). This

24   provision requires employers to implement engineering controls where

25   feasible and administrative controls where practicable, or provide respiratory

26   protection where engineering and administrative controls cannot protect

27   employees and during emergencies.

28   112.   COVID-19 was a harmful exposure at Defendant's workplace.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

113. Defendant's conduct, as alleged herein, created an unsafe work environment.

114. Plaintiff complained about her safety concerns to Defendant.

115. Defendant intentionally created or knowingly permitted these working conditions.

116. Plaintiff feared for her health and safety.

117. Defendant constructively terminated Plaintiff's employment.

118. Such actions are unlawful, in violation of public policy of the State of California, and have resulted in damage and injury to Plaintiff, as alleged herein.

119. Plaintiff believes and thereon alleges that Defendant's failure to provide a safe work environment was a substantial motivating reason for Defendant's constructive termination of her employment with Defendant.

120. Defendants' constructive termination of Plaintiff's employment on the basis of its failure to provide a safe work environment violated the public policy of the State of California embodied in the California Code of Regulations Title 8 of the California Occupational Safety and Health Regulations (Cal/OSHA), in violation of California law pursuant to Green v. Ralee Engineering Co. (1998) 19 Cal.4th 66.

121. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

122. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

123. As a result of Defendants' deliberate, outrageous, despicable conduct,

Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

## THIRD CAUSE OF ACTION

## WRONGFUL CONSTRUCTIVE TERMINATION

## IN VIOLATION OF PUBLIC POLICY

## [29 USC 654(a)(1)]

124.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

125.   At all times relevant, Plaintiff was Defendant's employee.

126.   The Federal Occupational Safety and Health Act (OSHA) of 1970 was in full force and effect and was binding on Defendant.

127.   The General Duty Clause, Section 5(a)(1) of the Occupational Safety and Health Act (OSHA) of 1970, 29 USC 654(a)(1), which requires employers to furnish to each worker "employment and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm."

128.   Defendant failed to thoroughly explore all options to comply with OSHA standards.

129.   COVID-19 was a hazard that caused or was likely to cause death or serious physical harm in Defendant's workplace.

130.   Defendant's conduct, as alleged herein, created an unsafe work environment.

131.   Plaintiff complained about her safety concerns to Defendant.

132.   Defendant intentionally created or knowingly permitted these working conditions.

133.   Plaintiff feared for her health and safety.

134.   Defendant constructively terminated Plaintiff's employment.

135.   Such actions are unlawful, in violation of public policy of the State of

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

California, and have resulted in damage and injury to Plaintiff, as alleged herein.

136.   Plaintiff believes and thereon alleges that Defendant's failure to provide a safe work environment was a substantial motivating reason for Defendant's constructive termination of her employment with Defendant.

137.   Defendants' constructive termination of Plaintiff's employment on the basis of its failure to provide a safe work environment violated the public policy of the United States embodied in the General Duty Clause, Section 5(a)(1) of the Occupational Safety and Health Act (OSHA) of 1970 in violation of California law pursuant to <u>Green v. Ralee Engineering Co.</u> (1998) 19 Cal.4th 66.3.

138.   As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

139.   As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

140.   As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

///

///

///

///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

## FOURTH CAUSE OF ACTION
## WRONGFUL CONSTRUCTIVE TERMINATION
## IN VIOLATION OF PUBLIC POLICY
## [29 C.F.R. § 1910.132]

141. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

142. At all times relevant, Plaintiff was Defendant's employee.

143. The Code of Federal Regulations Title 29 of the Occupational Safety and Health Standards (OSHA) was in full force and effect and was binding on Defendant.

144. Title 29 section 1910.132 requires employers to conduct a hazard assessment to determine if hazards are present or are likely to be present in the workplace that necessitate the use of Personal Protective Equipment (PPE). If such hazards are present, or likely to be present, the employer is required to select and have each affected employee use PPE that will protect the employee from such hazards, communicate selection decisions and select the PPE that properly fits each affected employee.

145. Title 29 section 1910.132 further requires employers to provide protective equipment, "including personal protective equipment for eyes, face, head and extremities, protective clothing, respiratory devices, and protective shields and barriers", "wherever it is necessary by reason of hazards of processes or environment" "encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact."

146. COVID-19 was a hazard that was present, or likely to be present, in Defendant's workplace that necessitated the use of PPE.

147. Defendant's conduct, as alleged herein, created an unsafe work environment.

148. Plaintiff complained about her safety concerns to Defendant.

149. Defendant intentionally created or knowingly permitted these working conditions.

150. Plaintiff feared for her health and safety.

151. Defendant constructively terminated Plaintiff's employment.

152. Such actions are unlawful, in violation of public policy of the State of California, and have resulted in damage and injury to Plaintiff, as alleged herein.

153. Plaintiff believes and thereon alleges that Defendant's failure to provide a safe work environment was a substantial motivating reason for Defendant's constructive termination of her employment with Defendant.

154. Defendants' constructive termination of Plaintiff's employment on the basis of its failure to provide a safe work environment violated the public policy of the United States embodied in the Code of Federal Regulations Title 29 of the Occupational Safety and Health Standards (OSHA), in violation of California law pursuant to <u>Green v. Ralee Engineering Co.</u> (1998) 19 Cal.4th 66.

155. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

156. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

157. As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

deter future similar reprehensible conduct.

## FIFTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION

158. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

159. Defendants' supervisory employees failed to provide a safe work environment in violation of California and federal law.

160. Defendants knew or should have known that this conduct was unlawful and in violation of California law.

161. Defendant constructively terminated Plaintiff's employment.

162. Such actions are unlawful, in violation of public policy of the State of California, and have resulted in damage and injury to Plaintiff, as alleged herein.

163. Plaintiff believes and thereon alleges that Defendant's failure to provide a safe work environment was a substantial motivating reason for Defendant's constructive termination of her employment with Defendant.

164. Defendants failed to take steps necessary to prevent the unlawful conduct described herein.

165. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

166. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1

## SIXTH CAUSE OF ACTION

2

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

3  167.  Plaintiff re-alleges and incorporates by reference each and every allegation

4        contained in the preceding paragraphs as though fully set forth herein.

5  168.  Defendants' intentional conduct, as set forth herein, was extreme and

6        outrageous.

7  169.  Defendants intended to cause Plaintiff to suffer extreme emotional distress.

8        Plaintiff suffered extreme emotional distress.

9  170.  As a further direct, foreseeable, and proximate result of Defendants'

10       conduct, Plaintiff has sustained and continues to suffer humiliation,

11       emotional distress, loss of reputation, and mental and physical pain and

12       anguish, all to Plaintiff's damage in an amount according to proof at trial.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**WHEREFORE**, Plaintiff prays for the following relief:

1. For compensatory damages, including back pay, front pay, and other monetary relief, in an amount according to proof;

2. For special damages in an amount according to proof;

3. For mental and emotional distress damages;

4. For punitive damages in an amount necessary to make an example of and to punish defendants, and to deter future similar misconduct;

5. For costs of suit, including attorneys' fees as permitted by law, including those permitted by California Code of Civil Procedure section 1021.5;

6. For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

7. For injunctive relief;

8. For such other and further relief as the Court deems proper and just under all the circumstances.

**PLAINTIFF MARGARITA SMITH** demands a jury trial on all issues in this case.

DATED: April 29, 2020

**GRUENBERG LAW**

JOSH D. GRUENBERG, ESQ.
COLETTE N. MAHON, ESQ.
Attorneys for Plaintiff,
**MARGARITA SMITH**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101