UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA SMITH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE LLC, et al.,<br><br>Defendants. | Case No.: 3:20-cv-0808-L-DEB<br><br>**ORDER ON DEFENDANT CORECIVIC OF TENNESSEE LLC'S MOTION TO DISMISS (DOC. NO. 6)** |

Pending before the Court is Defendant Corecivic of Tennessee LLC's Motion to Dismiss. Plaintiff filed an opposition. Defendant replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1. For the reasons stated below, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND**.

### I. BACKGROUND

This lawsuit relates to the COVID-19 pandemic. (*See* Doc. No. 1, Complaint ("Compl.")). COVID-19 is an infectious disease that is transmitted via respiratory droplets, which are released when someone with the disease sneezes, coughs, or talks. (*Id*. at ¶ 32). Individuals with certain medical conditions, like asthma, are at a heightened risk of severe illness from COVID-19. (*Id*. at ¶ 33).

1

Defendant Corecivic of Tennessee LLC ("Defendant") is a private operator of correctional facilities with contracts for services with U.S. Immigration and Customs Enforcement and U.S. Marshals Service. (*Id*. at ¶ 16). It operates the Otay Mesa Detention Center, a privately owned immigration detention center, which houses about 1200 detainees and inmates. (*Id*. at ¶¶ 17-18). There is an increased risk for COVID-19 transmission at Defendant's detention facilities. (*Id*. at ¶¶ 36-38).

Defendant hired Plaintiff Margarita Smith ("Plaintiff") in April 2009. (*Id*. at ¶ 15). During the time at issue, Plaintiff was a Senior Detention Officer in the Transportation Department. (*Id*. at ¶ 22). She supervised all employees in the Transportation Department. (*Id*.) She also conducted compliance inspections at hospitals where inmates/detainees were held. (*Id*. at ¶ 23).

Plaintiff has asthma. (*Id*. at ¶ 41). Throughout 2019, Plaintiff also suffered from pneumonia, respiratory issues, and related medical illnesses, which all put her at a higher risk of illness from COVID-19. (*Id*. at ¶ 42). Plaintiff was out of work due to pneumonia during the first week of March 2020. (*Id*. at ¶ 43).

Plaintiff alleges Defendant failed to provide a safe work environment or prevent the spread of COVID-19 at its facilities. (*See generally* Compl.) Specifically, Defendant failed to clean its facilities or provide its employees with required supplies (such as disposable gloves and masks). (*Id*. at ¶¶ 55-64). It also failed to implement social distancing protocols and exposed its employees to inmates/detainees who might have had COVID-19. (*Id*. at ¶¶ 68-69). Defendant prohibited Plaintiff and other employees from wearing masks in housing units and other areas of the facility. (*Id*. at ¶ 53).

On March 31, 2020, as a result of the above conduct, Plaintiff resigned. (*Id*. at ¶ 81). Plaintiff contends there were no other reasonable alternatives. (*Id*. at ¶ 82).

According to the Complaint, as of April 23, 2020, there were 142 inmates/detainees and several employees who tested positive for COVID-19. (*Id*. at ¶ 83).

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotation marks and citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court assumes the factual allegations are true and construes them in the light most favorable to the plaintiff. *Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014).

## III. DISCUSSION

Plaintiff asserts six causes of action against Defendant: (1) Wrongful Constructive Termination in Violation of Public Policy based on California Labor Code § 6400, *et seq.*; (2) Wrongful Constructive Termination in Violation of Public Policy based on California Code of Regulations, Title 8, §§ 5141 and 3380; (3) Wrongful Constructive Termination in Violation of Public Policy based on 29 U.S.C. § 654(a)(1); (4) Wrongful Constructive Termination in Violation of Public Policy based on 29 C.F.R. §§ 1910.132; (5) Negligent Supervision; and (6) Intentional Infliction of Emotional Distress ("IIED"). Defendant argues the Court should dismiss the entire Complaint.

### 1. Wrongful Constructive Termination Claims

Defendant, relying in part on *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), argues the constructive termination claims are subject to dismissal because it did not terminate Plaintiff for "performing an act that public policy would encourage, or for refusing to do something that public policy would condemn." (Doc. No. 6, Motion to Dismiss ("MTD") at 4). The Court rejects that argument. *See Rojo v. Kliger*, 52 Cal. 3d 65, 91 (1990) ("we reject [the] argument that *Tameny* claims [i.e., wrongful constructive termination claims] should be limited to situations where, as a condition of employment, the employer 'coerces' an employee to commit an act that violates public policy, or 'restrains' an employee from exercising a fundamental right, privilege, or obligation.")

"An action for wrongful discharge" exists where "the basis of the discharge contravenes a fundamental public policy." *Id*.  Therefore, an employee can state a wrongful constructive termination claim where their employer subjects them to "working conditions that violate public policy," such as "an alleged failure to maintain a safe work environment."  *Brooks v. Corecivic of Tenn. LLC*, 2020 U.S. Dist. LEXIS 162429, at *10-11 (S.D. Cal. 2020) (quoting California Civil Jury Instruction 2432).

Here, Plaintiff is pursuing a claim based on Defendant's alleged failure to adequately protect against COVID-19 in the detention center.  (*See* Compl.)  That type of wrongful constructive termination claim is at least viable at the pleading stage.  *Brooks*, 2020 U.S. Dist. LEXIS 162429, at *10-11.

Defendant next argues Plaintiff failed to allege facts to show she was subjected to intolerable working conditions such that a reasonable person in her position would have no reasonable alternative except to resign.

Plaintiff alleges Defendant knew about the COVID-19 pandemic and the need to take measures to prevent the spread of it at the detention center.  (Compl. ¶¶ 49-50).  The failure to take protective measures put employees with certain medical conditions (i.e., asthma or pneumonia), like Plaintiff, at a significant risk of severe illness.  (*Id*. at ¶¶ 33, 41-43).  There was also an increased risk for COVID-19 transmission at Defendant's facilities.  (*Id*. at ¶¶ 36-38).  Yet, Defendant did not provide hand sanitizer or required supplies (i.e., masks and gloves) to employees.  (*Id*. at ¶¶ 55-56).  It also did not disinfect the work areas or equipment.  (*Id*. at ¶¶ 57-64).  Inmates/detainees – up to 240 at one time – were held in the same room.  (*Id*. at ¶ 65).  Employees were exposed to inmates/detainees who had temperatures over 100.4 °F.  (*Id*. at ¶ 69).  In addition, Defendant held meetings with about 30 to 40 employees in a break room.  (*Id*. at ¶ 66).

1  Moreover, it prohibited its employees from wearing masks.  (*Id*. at ¶ 53).  Overall,
2  Plaintiff alleges a plausible claim.[1]
3     Lastly, Defendant argues Plaintiff must plead she was "subjected to differential
4  treatment."  (MTD at 7).  The Court is not convinced that is a required element.  *See*
5  *Brooks*, 2020 U.S. Dist. LEXIS 162429 at *15-16 (rejecting argument that differential
6  treatment is an element for all wrongful constructive termination claims); *Turner v.*
7  *Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994) ("In order to establish a constructive
8  discharge, an employee must plead . . . that the employer either intentionally created or
9  knowingly permitted working conditions that were so intolerable or aggravated at the
10 time of the employee's resignation that a reasonable employer would realize that a
11 reasonable person in the employee's position would be compelled to resign.")  The Court
12 therefore denies Defendant's motion to dismiss as to causes of action one through four.

### 2. Negligent Supervision and Intentional Infliction of Emotional Distress

14    Defendant argues Plaintiff's negligent supervision and IIED claims are subject to
15 dismissal under the workers' compensation exclusivity rule.  (*See* MTD at 8-10).
16    In general, workers' compensation is the exclusive remedy for injuries that occur
17 in the normal scope of employment.  *See Miklosy v. Regents of Univ. of Calif.*, 44 Cal.
18 4th 876, 902 (2008); *see* Cal. Labor Code § 3600.  Negligent supervision and IIED claims
19 often fall within the workers' compensation structure, including claims related to an
20 employer's requirement to maintain a safe workplace.  *See Brooks*, 2020 U.S. Dist.
21 LEXIS 162429 at *17-18 (collecting cases); *see also Miklosy*, 44 Cal. 4th at 902.

---

[1] In the beginning of the COVID-19 pandemic – around the time Plaintiff resigned – the guidance from the local, state, and federal level changed or evolved rather quickly, including guidance on the use of masks.  It is unclear from the Complaint when Defendant prohibited its staff from wearing masks (in relation to when the government recommended/required it).  (*See* Compl. ¶ 53).  However, at this stage, the allegations are sufficient to state a plausible claim.  *Mujica*, 771 F.3d at 589.

Here, Plaintiff's claims are based on Defendant's alleged failure to provide a safe work environment or institute required protocols related to COVID-19.  (*See* Compl.)  Based on those allegations, the Court finds the claims are barred under the above rule.  *See Brooks*, 2020 U.S. Dist. LEXIS 162429 at *20 ("Because the obligation to provide a safe and healthy workplace is inextricably part of the compensation bargain, Plaintiff's negligent supervision and intentional infliction of emotional distress claims are barred by workers' compensation exclusivity."); *Arnold v. Corecivic of Tenn.*, 2021 U.S. Dist. LEXIS 2868, at *16 (S.D. Cal. 2021) (same); *see also* Governor Newsom's Exec. Order N-62-20 (May 2020) ("any COVID-19 related illness of an employee shall be presumed to arise out of and in the course of the employment for purposes of awarding workers' compensation benefits.")  The Court therefore dismisses the negligent supervision and IIED claims.

Plaintiff requests leave to amend.  (*See* Doc. No. 7, Opposition at 23).  Given the liberal rule on amendments, the Court grants the request.  *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** the motion to dismiss as to causes of action one through four and **GRANTS** the motion to dismiss as to causes of action five through six **WITH LEAVE TO AMEND**.  Plaintiff has until **March 24, 2021** to file an amended complaint.

**IT IS SO ORDERED.**

Dated:  March 10, 2021

*[signature]*
Hon. M. James Lorenz
United States District Judge